MICHAEL C. VAN, ESQ. (3876)
ROBERT T. SPJUTE, ESQ. (13866)
**SHUMWAY VAN**
8 East Broadway, Suite 550
Salt Lake City, Utah 84111
Phone: (801) 478-8080
Fax: (801) 478-8088
tee@shumwayvan.com
michael@shumwayvan.com

STEVEN STERN, ESQ. (pro hac vice application forthcoming)
BENJAMIN LITTLE, ESQ. (pro hac vice application forthcoming)
**STERN & SCHURIN LLP**
595 Stewart Avenue, Suite 510
Garden City, New York 11530
Phone: (516) 248-0300
Fax: (516) 283-0277
sstern@sternschurin.com
blittle@sternschurin.com

*Attorneys for Filter USA, Inc. and Benjamin Friedlander*

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **SKULLCANDY, INC.**, a Delaware corporation,<br><br>     **Plaintiff,**<br>  v.<br><br>**FILTER USA, INC.**, a New York corporation, **BENJAMIN FRIEDLANDER**, an individual, both doing business as "Filter Pro" on www.amazon.com, and **JOHN DOES 1-10**,<br><br>     **Defendants.** | **DEFENDANTS FILTER USA, INC. AND BENJAMIN FRIEDLANDER'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM PURSUANT TO FED. R. CIV. P. 12(b)(6) AND INCORPORATED MEMORANDUM OF LAW**<br><br>**Civil Action No. 18-cv-00748-EJF**<br><br>**Magistrate Judge: Evelyn J. Furse** |

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF FACTS .....................................................................................2

ARGUMENT ..........................................................................................................3

I.   THE COURT MUST DISMISS THIS ACTION AGAINST DEFENDANTS
     PURSUANT TO FED. R. CIV. P. 12(b)(6) ...............................................3

     A.  LEGAL STANDARD FOR A MOTION TO DISMISS
         PURSUANT TO FED. R. CIV. P. 12(b)(6) ........................................3

     B.  STANDARD FOR TRADEMARK INFRINGEMENT WHEN
         PRODUCTS AT ISSUE ARE ALLEGED TO BE NONGENUINE ...............3

     C.  SKULLCANDY'S CLAIMS OF MATERIAL DIFFERENCE BASED ON
         WARRANTY ARE WITHOUT MERIT UNDER NEW YORK LAW ............6

         1.  N.Y. Gen. Bus. Law § 369-b Prohibits Skullcandy from Denying
             Warranty Coverage to Genuine Skullcandy Products Sold by Filter USA .................6

         2.  Since Defendants Operate Exclusively in New York, All Sales by Defendants are
             "New York Transactions" and N.Y. Gen. Bus. Law § 369-b Applies to All Sales of
             Genuine Skullcandy Products by Filter USA ..............................................7

         3.  Since Plaintiff Fails to Plead Negligence on Defendants' Part, No Exception to N.Y.
             Gen. Bus. Law §369-b Applies ...................................................................8

     D.  SKULLCANDY'S CLAIMS OF MATERIAL DIFFERENCE BASED ON NON-
         COMPLIANCE WITH ITS QUALITY CONTROL PROCEDURES DO NOT STATE A
         CLAIM FOR RELIEF BECAUSE THE PROCEDURES ARE PRETEXTUAL AND
         ARE NOT SUFFICIENTLY PLED ................................................................9

         1.  Plaintiffs' Pled Quality Control Procedures Do Not Qualify as Legitimate,
             Substantial, and Non-Pretextual and Would Not Result in Differences Between
             Products If Not Followed by Defendants ..................................................10

         2.  Plaintiff Fails to Plead Sufficient Factual Allegations to Support A Reasonable
             Inference That Defendants Have Failed to Follow Plaintiff's Quality Control
             Procedures ................................................................................................13

CONCLUSION ....................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                     **Page(s)**

*Adolph Coors Co. v. A. Genderson & Sons, Inc.*,
  486 F. Supp. 131 (D. Colo. 1980) .................................................................................11

*Arista Records Ltd. Liab. Co. v. Doe*,
  604 F.3d 110 (2d Cir. 2010) .........................................................................................14

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937 (2009) .......................................................................3, 14

*Bel Canto Design, Ltd. v. MSS HiFi, Inc.*,
  837 F. Supp. 2d 208 (S.D.N.Y. 2011) .......................................................................6, 7, 8

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955 (2007) .....................................................................3, 8, 16

*Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*,
  562 F.3d 1067 (10th Cir. 2009) ...................................................................................4, 5

*Berneike v. CitiMortgage, Inc.*,
  708 F.3d 1141 (10th Cir. 2013) .................................................................................3, 14

*Bixler v. Foster*,
  596 F.3d 751 (10th Cir. 2010) ........................................................................................3

*Cottrell, Ltd. v. Biotrol Int'l Inc.*,
  191 F.3d 1248 (10th Cir. 1999) ......................................................................................3

*Davidoff & CIE, S.A. v. PLD Int'l Corp.*,
  263 F.3d 1297 (11th Cir. 2001) ...................................................................................4, 5

*Elite Nutrition Ctrs. v. Kocheskov*,
  2007 U.S. Dist. LEXIS 87079 (D. Utah Nov. 27, 2007) .....................................................5

*Four Winds Interactive Ltd. Liab. Co. v. 22 Miles, Inc.*,
  2017 U.S. Dist. LEXIS 215161 (D. Colo. Mar. 28, 2017) ................................................14

*Iberia Foods Corp. v. Romeo*,
  150 F.3d 298 (3d Cir. 1998).................................................................................4, 5, 9, 11

*Khalik v. United Air Lines*,
  671 F.3d 1188 (10th Cir. 2012) ......................................................................................3

*L'Oreal USA, Inc. v. Trend Beauty Corp.*,
    2013 U.S. Dist. LEXIS 115795 (S.D.N.Y. Aug. 15, 2013) ...............................................11

*Leapers, Inc. v. First Quality Distribs., Inc.*,
    2012 U.S. Dist. LEXIS 67650 (E.D. Mich. May 15, 2012)...............................................14

*Lockyer v. AXA Advisors, LLC*,
    2010 U.S. Dist. LEXIS 117917 (D. Utah Oct. 12, 2010) ....................................................3

*Matrix Essentials, Inc. v. Emporium Drug Mart, Inc.*,
    988 F.2d 587 (5th Cir. 1993) ......................................................................................4, 10

*Miller v. Glanz*,
    948 F.2d 1562 (10th Cir.1991) .......................................................................................14

*NEC Electronics v. CAL Circuit Abco*,
    810 F.2d 1506 (9th Cir. 1987) ..........................................................................................4

*PepsiCo, Inc. v. F & H Kosher Supermarket, Inc.*,
    2011 U.S. Dist. LEXIS 143331 (E.D.N.Y. Aug. 26, 2011)...............................................11

*Pepsico, Inc. v. Longmont Packing*,
    1999 U.S. Dist. LEXIS 12811 (D. Colo. July 30, 1999) ...................................................11

*S&L Vitamins, Inc. v. Australian Gold, Inc.*,
    521 F. Supp. 2d 188 (E.D.N.Y. 2007) ................................................................10, 11, 12

*Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*,
    53 F.3d 1073 (9th Cir. 1995) .............................................................................................4

*Shell Oil Co. v. Commercial Petroleum, Inc.*,
    928 F.2d 104 (4th Cir. 1991) .......................................................................................4, 11

*Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*,
    982 F.2d 633 (1st Cir. 1992)..............................................................................................5

*Standard Process, Inc. v. Banks*,
    554 F. Supp. 2d 866 (E.D. Wis. 2008)..............................................................................12

*Sutton v. Utah Sch. for the Deaf and Blind*,
    173 F.3d 1226 (10th Cir. 1999) .......................................................................................14

*Technomarine SA v. Jacob Time, Inc.*,
    905 F. Supp. 2d 482 (S.D.N.Y. 2012).............................................................................8, 9

iv

*Warner–Lambert Co. v. Northside Dev. Corp.*,
    86 F.3d 3 (2d Cir. 1996)............................................................................5, 9

*Weber Luke All., LLC v. Studio 1C Inc.*,
    233 F. Supp. 3d 1245 (D. Utah 2017)......................................................3, 8

*Zino Davidoff SA v. CVS Corp.*,
    571 F.3d 238 (2d Cir. 2009).........................................................................8

## Rules and Statutes

15 U.S.C. § 1114 ..............................................................................................4

15 U.S.C. § 1125 ..............................................................................................4

28 U.S.C. § 1367(c)(3).....................................................................................5

Fed. R. Civ. P. 12(b)(6) ................................................................................3, 9

N.Y. Gen. Bus. Law § 369-b .......................................................................6-9

Defendants Filter USA, Inc. ("Filter USA") and Benjamin Friedlander (incorrectly sued individually herein as doing business as "Filter Pro" on www.amazon.com) (collectively "Defendants") submit this Motion to Dismiss for Failure to State a Claim pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

Filter USA offers for sale and sells genuine and authentic Skullcandy products through Amazon.com.  Filter USA only offers for sale and sells genuine and authentic Skullcandy products that are new and have not been altered or modified.  Through this action, Plaintiff attempts to cut off Filter USA's legitimate business through bogus claims that Defendants have violated trademark law.  Yet, on the facts alleged in the Complaint, such remedies are not available through trademark law since the Skullcandy products offered for sale and sold by Filter USA are genuine. They are not materially different from those offered for sale and sold by Plaintiff, nor do either of the Defendants violate any non-pretextual quality control measures.

The Complaint alleges facts asserting the products advertised and sold by Filter USA are "materially different" from authentic Skullcandy products.  Plaintiff's arguments are premised on withholding its Limited Warranty from the Skullcandy products sold by Filter USA.  However, Plaintiff's claim asserting that there is a material difference based on the lack of a warranty is barred by New York law and therefore, as a matter of law, cannot constitute a "material difference."  Moreover, the Complaint lists vague generalities about e-commerce and potential misconduct occurring on the Internet without identifying any instances of infringing conduct by Defendants.  In particular, Plaintiff hangs its accusations on Skullcandy product reviews posted by Amazon.com users, which Plaintiff cannot and does not present as actually reflecting purchases of products sold by Filter USA.   The Complaint similarly presents pretextual quality control

procedures which have no connection to maintaining the quality of the products, or which are completely lacking in sufficient factual support beyond pleading "upon information and belief." Accordingly, Plaintiff does not raise sufficient allegations to state a claim for trademark infringement upon which relief can be granted and the Complaint must therefore be dismissed.

## STATEMENT OF FACTS

Plaintiff commenced this action on September 19, 2018 by a filing a Complaint, asserting, *inter alia*, that products offered for sale and sold by New York-based Defendants are not genuine and do not abide by and interfere with Skullcandy's quality controls. *See* Dkt. No. 2, "*Complaint*", ¶109-111. The Complaint further alleges that Plaintiff has been granted numerous trademark registrations from the United States Patent and Trademark Office ("USPTO") for the "Skullcandy Trademarks" which are "in full force and effect." *Id*., ¶¶10-11.

Filter USA Inc. is a corporation organized under the laws of the State of New York and is headquartered in and operates solely out of the State of New York. *Id*., ¶2.  Benjamin Friedlander is an employee of Filter USA, Inc. and resides in the State of New York. *Id*., ¶3. Defendants sell genuine and authentic products through Amazon.com, including genuine and authentic Skullcandy products. *Id*., ¶72.

Plaintiff alleges that the Skullcandy products offered for sale and sold by Defendants are "materially different" than Plaintiff's Skullcandy products because the Skullcandy products sold by Defendants are not covered by Skullcandy's Limited Warranty, i*d*., ¶ 93, and the Skullcandy products sold by Defendants are not subject to Skullcandy's other quality control procedures. *Id*., ¶¶75-88. Plaintiff alleges that, as a result of the conduct alleged, Defendants have violated federal and state trademark law and other related rights. *Id*., ¶¶132-282.

2

## ARGUMENT

### I. THE COURT MUST DISMISS THIS ACTION AGAINST DEFENDANTS PURSUANT TO FED. R. CIV. P. 12(b)(6)

#### A. LEGAL STANDARD FOR A MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)). A court must dismiss any claim that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *see also Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012). Although a court accepts all well-plead allegations of the complaint as true and views the complaint in the light most favorable to the nonmoving party, *see Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1144 (10th Cir. 2013), to survive dismissal under Rule 12(b)(6), a plaintiff must "nudge[] their claims across the line from conceivable to plausible." *Weber Luke All., LLC v. Studio 1C Inc.*, 233 F. Supp. 3d 1245, 1253 (D. Utah 2017) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). This includes presenting sufficient pleaded factual content which allows a court to draw a reasonable inference that a defendant is liable for the misconduct alleged. *Berneike*, 708 F.3d at 1144-45 (quoting *Iqbal*, 556 U.S. at 678). However, dismissal of a complaint is appropriate when "[a] plaintiff can prove no set of facts in support of the claims that would entitle him to relief." *Lockyer v. AXA Advisors, LLC*, 2010 U.S. Dist. LEXIS 117917, at *4 (D. Utah Oct. 12, 2010) (quoting *Cottrell, Ltd. v. Biotrol Int'l Inc.*, 191 F.3d 1248, 1251 (10th Cir. 1999).

#### B. STANDARD FOR TRADEMARK INFRINGEMENT WHEN PRODUCTS AT ISSUE ARE ALLEGED TO BE NONGENUINE

The Lanham Act bars the unauthorized use in commerce of any reproduction, counterfeit,

copy, or colorable imitation of a registered mark in a way that is likely to cause confusion, mistake, or deceit. *See* 15 U.S.C. §§1114, 1125. However, when a purchaser resells a trademarked article bearing a trademark owner's mark and does nothing more, there is no actionable misrepresentation under the statute because the article was always, and still remains, genuine and authentic. *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1301-02 (11th Cir. 2001) (c*iting Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 303 (3d Cir. 1998)); *Matrix Essentials, Inc. v. Emporium Drug Mart, Inc.*, 988 F.2d 587 (5th Cir. 1993); *Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073 (9th Cir. 1995).  Most notably, trademark law does **not** apply to the sale of genuine goods bearing a true mark, even if the sale is without the mark owner's consent. *Matrix*, 988 F.2d at 590; *see also Shell Oil Co. v. Commercial Petroleum, Inc.*, 928 F.2d 104, 107 (4th Cir. 1991) (citing *NEC Electronics v. CAL Circuit Abco*, 810 F.2d 1506 (9th Cir. 1987)).

Accordingly, the resale of trademarked articles is not infringing under the Lanham Act unless those articles are found to be "nongenuine."  At issue herein, Plaintiff, through conclusory and unsupported allegations, attempts to plead that Defendants' are dealing in products that have become "nongenuine" through two paths:

First, if goods are found to be materially different or have been materially altered in comparison to the mark holder's product, they may be considered nongenuine. *Davidoff & CIE*, 263 F.3d at 1301-02. However, not all differences between products are material and some "prove so minimal that consumers who purchase the alleged infringer's goods get precisely what they believed they were purchasing [and] consumers' perceptions of the trademarked goods are not likely to be affected by the alleged infringer's sales." *See Iberia Foods*, 150 F.3d at 303.  A material difference is one that consumers consider relevant to a decision about whether to purchase a product. *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1076 (10th

Cir. 2009); *Iberia Foods*, 150 F.3d at 303; *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 640 (1st Cir. 1992); *Davidoff & CIE*, F.3d at 1302.

Second, courts have found that goods are materially different and therefore nongenuine if they are not manufactured and/or distributed in accordance with the trademark owner's quality control standards. *See Davidoff & CIE*, 263 F.3d at 1301-02; *Warner–Lambert Co. v. Northside Dev. Corp.*, 86 F.3d 3, 6 (2d Cir. 1996). To make such a claim, a trademark holder must demonstrate that "(i) it has established legitimate, substantial, and nonpretextual quality control procedures, (ii) it abides by these procedures, and (iii) the non-conforming sales will diminish the value of the mark." *Warner-Lambert*, 86 F.3d at 6.

Overall, in order to establish trademark infringement in situations where products sold are alleged to be nongenuine, a plaintiff must demonstrate that there is a material difference between the products it offers and those offered by the alleged infringer. *Beltronics*, 562 F.3d at 1071-1072 (citing *Davidoff & CIE*, 263 F.3d at 1302) (finding that "those who resell genuine trademarked products are generally not liable for trademark infringement" except "when an alleged infringer sells trademarked goods that are materially different than those sold by the trademark owner"). If there are no material differences between the products sold, then the products offered by the alleged infringer are "genuine" and any action for recovery under trademark law must fail. *Id*.[1]

---

[1] Plaintiff's federal claims center on alleged violations of the Lanham Act, the standard for which is "likelihood of consumer confusion" and is demonstrated by material differences between the products sold by Defendants and Plaintiffs. *See Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 640 (1st Cir. 1992) ("Whether the fulcrum of [a] plaintiff's complaint is perceived as Section 32(1)(a), Section 42, or Section 43(a), liability necessarily turns on the existence *vel non* of material differences between the product of a sort likely to create confusion."). If Plaintiff has failed to sufficiently plead material differences, all federal claims must be dismissed. The only remaining claims would then be state and common law claims, for which the Court would no longer have subject-matter jurisdiction, even if such claims remained valid. 28 U.S.C. § 1367(c)(3); *Elite Nutrition Ctrs. v. Kocheskov*, 2007 U.S. Dist. LEXIS 87079, at *6-*8 (D. Utah Nov. 27, 2007) (dismissing state law claims for lack of jurisdiction after dismissing

### C.  SKULLCANDY'S CLAIMS OF MATERIAL DIFFERENCE BASED ON WARRANTY ARE WITHOUT MERIT UNDER NEW YORK LAW

In its Complaint, Plaintiff alleges that because Defendants are an unauthorized reseller, the products they offer are not covered by Plaintiff's warranty and are therefore materially different. *See Complaint* at ¶¶68-69, 93.  However, Plaintiff's stated desire to prevent the extension of its warranty to "unauthorized sellers," such as Filter USA, is prohibited by New York statute. Therefore, Plaintiff can hardly claim a material difference that if enforced by Plaintiff would constitute a violation of law.

### 1.  N.Y. Gen. Bus. Law § 369-b Prohibits Skullcandy from Denying Warranty Coverage to Genuine Skullcandy Products Sold by Filter USA

Withholding warranty coverage based on the status of the seller is expressly prohibited under New York law.  Accordingly, any pleading of material difference based thereon fails to state a claim.  Section 369-b of the New York General Business Law states in relevant part:

> A warranty or guarantee of merchandise may not be limited by a manufacturer doing business in this state solely for the reason that such merchandise is sold by a particular dealer or dealers . . . Any attempt to limit the manufacturer's warranty or guarantee for the aforesaid reason is void.

N.Y. Gen. Bus. Law § 369-b. The Practice Commentary to Section 369-b makes clear that the purpose of the law is to "prevent denial of manufacturer warranty service to customers . . . because goods were sold by unauthorized dealers." *Bel Canto Design, Ltd. v. MSS HiFi, Inc.*, 837 F. Supp. 2d 208, 227 (S.D.N.Y. 2011) (citing N.Y. Gen Bus. Law § 369-b, Practice Commentaries, McKinney's Consol. Laws of N.Y., Vol. 19, at 523-24 (Givens)).  Indeed, "[a]buse may arise if

---

trademark claims which established original jurisdiction). Therefore, Defendants need only demonstrate that Plaintiff has failed to sufficiently plead its Lanham Act claims to dismiss the Complaint in its entirety.

[a] manufacture seeks to avoid an express warranty because the "wrong" dealer sold the goods…this is the evil at which [Gen. Bus. Law §] 369-b is aimed." *Id*.  In this case, Plaintiff claims to deny warranty coverage for genuine Skullcandy products sold by Filter USA due to its own designation of Filter USA as an unauthorized seller.  If this is actually Plaintiff's position, Plaintiff is in violation of New York law.  Based on N.Y. Gen. Bus. Law § 369-b, Plaintiff may not refuse to honor its warranty to consumers who purchased the genuine Skullcandy products sold by Defendants solely on that basis. Any such effort violates a New York statute. Therefore, Skullcandy's warranty coverage **must** be extended to genuine Skullcandy Products sold by Filter USA, and Plaintiff's claims of material difference based thereon are without factual support. Accordingly, there is no material difference on this basis and thus Plaintiff fails to state a valid claim.

    2.    **Since Defendants Operate Exclusively in New York, All Sales by Defendants are "New York Transactions" and N.Y. Gen. Bus. Law § 369-b Applies to All Sales of Skullcandy Products by Filter USA**

To circumvent this fatal error in its position, Plaintiff may attempt to argue that New York law is not applicable to all of the purchases of products from Filter USA on Amazon.com since some of those sales may have been made to customers residing outside of New York.  Plaintiff would be incorrect in making such a contention.  That is because the terms of N.Y. Gen. Bus. Law § 369-b apply equally to consumers located in New York and outside of New York.  N.Y. Gen. Bus. Law § 369-b governs any consumer purchases made "via a New York transaction." *Bel Canto*, 837 F. Supp. 2d at 228.  Courts have held that "a New York transaction" includes "*even the receipt of Internet orders physically within New York State*." *Id*. (emphasis in original). Defendants operate solely within the State of New York. *See Complaint* ¶¶3-4. Thus, every order received by Defendants, including those made by receipt of Internet orders – the exact type of consumer orders

at issue in the Complaint (*See Complaint* ¶72) – constitutes a "New York transaction." Every transaction by Defendants of genuine Skullcandy products is therefore subject to N.Y. Gen. Bus. Law § 369-b. As a result, any effort by Plaintiff to withhold its warranty from genuine Skullcandy products sold by Defendants would violate New York law. Plaintiff therefore, on the facts alleged in its Complaint, can prove no set of facts in support of its claims and the Complaint should be dismissed.

### 3. Since Plaintiff Fails to Plead Negligence on Defendants' Part, No Exception to N.Y. Gen. Bus. Law § 369-b Applies

N.Y. Gen. Bus. Law § 369-b applies generally to all consumer purchases made via a New York transaction, unless "a dealer is known to the manufacturer to handle the product in a negligent manner." *Bel Canto*, 837 F. Supp. 2d at 229. Such negligent manner has included removal or alteration of product serial numbers. *Id*. (citing *Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 238 (2d Cir. 2009)); *Technomarine SA v. Jacob Time, Inc.*, 905 F. Supp. 2d 482, 491 (S.D.N.Y. 2012).

In this case Plaintiff has not pled that Defendants altered or removed any product serial numbers. Further, none of the activities pled rise to the level any other forms of possible negligence on the part of Defendants in handling the Skullcandy products. *See Complaint* ¶¶76-83. For example, not providing Skullcandy with business information or selling products anonymously have nothing to do with the manner in which the products are handled. *See Complaint* ¶76-77. Further, any allegation that could potentially deal with how the product is handled is pled "upon information and belief" and completely lacks any factual support which can move the allegation across the line from conceivable to plausible and thereby demonstrate that Defendants are <u>known</u> by Plaintiff to handle the product in a negligent manner. *Weber Luke All.*, 233 F. Supp. 3d at 1253 (quoting *Twombly*, 550 U.S. at 570); *See Complaint* ¶ 80 ("*upon information and belief*, Defendants do not store their products in a cool, dry place, away from direct sunlight"); ¶ 79 ("*upon*

*information and belief*, Defendants do not inspect the products they sell for damage") (emphasis added). Therefore, because Plaintiff has not sufficiently alleged that Defendants have handled the Skullcandy products in a negligent manner nor alleged that it has knowledge that Defendants handle the Skullcandy products in a negligent way, no exception to N.Y. Gen. Bus. Law § 369-b applies.

### D.  SKULLCANDY'S CLAIMS OF MATERIAL DIFFERENCE BASED ON NON-COMPLIANCE WITH ITS QUALITY CONTROL PROCEDURES DO NOT STATE A CLAIM FOR RELIEF BECAUSE THE PROCEDURES ARE PRETEXTUAL AND ARE NOT SUFFICIENTLY PLED

Though quality control measures are important to avoid the creation of subtle differences in the quality of products, "'[q]uality control' is not a talisman the mere utterance of which entitles the trademark owner to judgment." *Iberia Foods*, 150 F.3d at 304. To establish a claim for trademark infringement for failure to follow quality control standards, the trademark holder must demonstrate principally that the quality control procedures it has established are legitimate, substantial, and non-pretextual. *See Warner-Lambert*, 86 F.3d at 6 ("To establish a claim for trademark infringement based on failure to follow quality control standards, "[t]he trademark holder must demonstrate only that: (i) it has established legitimate, substantial, and nonpretextual quality control procedures, (ii) it abides by these procedures, and (iii) the non-conforming sales will diminish the value of the mark.").

The test is whether the quality control procedures are likely to result in differences between the products such that consumer confusion regarding the sponsorship of the products could injure the trademark owner's goodwill. *Iberia Foods*, 150 F.3d at 304; *see also*, *Technomarine*, 905 F. Supp. 2d at 490-91 (finding that the plaintiff had not alleged facts to suggest that it has established "substantial" post-sale quality control procedures, or that non-conforming sales diminish the value of its mark, and stating "cases in which the quality control test has supported a non-genuineness

9

claim routinely and more specifically allege an actual disruption in quality control procedures and how such disruption has or would be likely to damage the product itself and thus impact the value of the mark.").

Courts have recognized viable quality control claims when the products involved had or could have had a "latent product defect due to the unauthorized distributor's failure to observe the manufacturer and mark owner's rigorous quality control standards [that] a consumer would not necessarily be aware of . . . and would thereby be confused or deceived." *S&L Vitamins, Inc. v. Australian Gold, Inc.*, 521 F. Supp. 2d 188, 204 (E.D.N.Y. 2007) (citing *Matrix Essentials, Inc. v. Emporium Drug Mart, Inc.,* 988 F.2d 587, 591 (5th Cir. 1993)). Plaintiff's attempts to plead claims of trademark infringement based upon Defendant's noncompliance with its quality control standards do not state a claim upon which a remedy may be granted. Fed. R. Civ. P. 12(b)(6). This is due to the facts that the quality control procedures as pled by Plaintiff would not result in differences between the products or latent defects whether the procedures were followed or not. Nor do the quality control procedures pled assist Plaintiff in combating counterfeiting. The quality control measures are therefore pretextual, insubstantial, and illegitimate and, claims based thereon must be dismissed. Further, there is insufficient factual support within the Complaint relating to the allegations of Defendants' noncompliance with the quality control procedures to support Plaintiff's claims. Simply, Plaintiff has not plausibly pled that the Defendant itself has violated its quality control procedures, much less that the products in question are anything but genuine articles.

1. **Plaintiff's Pled Quality Control Procedures Do Not Qualify as Legitimate, Substantial, and Non-Pretextual and Would Not Result in Differences Between Products If Not Followed by Defendants**

Plaintiff's claims of trademark infringement based on Defendants' failure to follow

Plaintiff's quality control procedures must also be dismissed because the quality control procedures are not legitimate, substantial, and nonpretextual and do not impact the quality of the product or result in differences between Plaintiff's products and those sold by Filter USA. The test as to whether the quality control standards are legitimate, substantial, and non-pretextual is whether the failure to follow the quality control standards would result in differences between the products or a latent product defect that the consumer may not be aware of and would result in confusion. *See Iberia Foods*, 150 F.3d, at 304; *S&L Vitamins*, 521 F. Supp. 2d, at 204. Courts generally recognize quality control procedures as legitimate, substantial, and nonpretextual when they protect a product from damage or latent defect or are used to identify counterfeit goods. S*ee, e.g.*, *Adolph Coors Co. v. A. Genderson & Sons, Inc.*, 486 F. Supp. 131 (D. Colo. 1980) (finding plaintiff's inability to control quality significant to trademark infringement claim where defendant failed to refrigerate plaintiff's "relatively delicate perishable product"); *Pepsico, Inc. v. Longmont Packing*, 1999 U.S. Dist. LEXIS 12811 (D. Colo. July 30, 1999) (finding interference with quality control procedures significant to trademark infringement claim where failure to follow procedures resulted in risk of leakage, loss of carbonation, and general deterioration of the Mexican product); *PepsiCo, Inc. v. F & H Kosher Supermarket, Inc.*, 2011 U.S. Dist. LEXIS 143331 (E.D.N.Y. Aug. 26, 2011) (finding interference with quality control where defendant's sales of product intended for foreign distribution prevented the plaintiff from monitoring the proper shipment, storage, and shelf life of the perishable product), *Shell Oil Co. v. Commercial Petroleum, Inc.,* 928 F.2d 104, 107 (4th Cir. 1991) (finding failure to observe the strict tank and line cleaning requirements, that Shell required to ensure the trademarked oil was not subject to residue impurities, a nonpretextual quality control procedure), *L'Oreal USA, Inc. v. Trend Beauty Corp.*, 2013 U.S. Dist. LEXIS 115795, at *51 (S.D.N.Y. Aug. 15, 2013) (finding use of coding to identify counterfeit goods to

11

be a legitimate quality control measure).

Unlike the quality control procedures at issue in the cases cited above, the quality control procedures which Plaintiff alleges are not followed by Defendants have no direct impact on the quality of the Skullcandy products, do not prevent physical differences or latent defects, and are not used in combating counterfeiting. Plaintiff alleges that Defendants have failed to follow its quality control procedures by, *inter alia*: Not providing their business information to Plaintiff (¶76); Selling products anonymously (¶77); Not disclosing their source of the Skullcandy products (¶78); Not providing ongoing support to consumer inquiries (¶87); and, Not addressing negative reviews (¶88). None of these alleged quality control procedures relate to maintaining the quality of the products such that no differences or latent defects arise in the products themselves. For example, a genuine product sold anonymously is still a genuine product since nothing has changed about the product itself and no latent defects have arisen as a result of the anonymity. Similarly, a genuine product sold without disclosing the source or supplier is still a genuine product because nothing has changed about the product itself and no latent defects arise as a result of the non-disclosure.

Furthermore, case law and Plaintiff's own Complaint belie several of the allegations set forth regarding quality control procedures. For example, as it relates to advising customers on safe and proper use of products (¶86), courts have understood and explained that consumers who make purchases online do so with a certain set of expectations, which includes the expectation that they will <u>not</u> receive individualized instruction on how to use the products they order. *See S&L Vitamins*, 521 F. Supp. 2d at 205 (when a customer purchases a product off the Internet, the customer does not expect that they will receive individualized instruction on how to use the product); *Standard Process, Inc. v. Banks*, 554 F. Supp. 2d 866, 870 (E.D. Wis. 2008) ("…when

the customer makes a purchase on the internet, the customer does not expect that he will receive individualized consultation."). This expectation by purchasers of online products undercuts any argument that the absence of personal instruction results in a material difference in the products and cannot therefore be said to be a nonpretextual quality control procedure.

Likewise, Plaintiff's Complaint contradicts itself in alleging that Defendants do not provide ongoing support to consumers. *Complaint* ¶ 87.  Consumers who make purchases on Amazon.com or other e-commerce websites are keenly aware that they may return a product or seek assistance by contacting the website through which the purchase was made. Such knowledge is evidenced within Plaintiff's own citations to Amazon.com reviews wherein the customers knew that they could seek a return as recourse for their dissatisfaction with the product. *See Complaint* ¶38 ("i (sic) am returning them") and ¶40 ("I am returning it.").  Requests for returns would be brought to the attention of the seller and the seller could thereby address the customer's concerns.  Therefore, there are no plausible grounds upon which to say Defendants could not or does not provide ongoing support and responses to consumer inquiries.

Since the aforementioned quality control procedures alleged by Plaintiff to have not been followed by Defendants do not relate to the maintaining the quality of the Skullcandy products, do not prevent differences or latent defects to the Skullcandy products, and do not assist with combating counterfeiting, the procedures cannot be said to be legitimate, substantial, and nonpretextual. Therefore, Plaintiff's Complaint fails to state a claim for trademark infringement on these grounds.

**2.   Plaintiff Fails to Plead Sufficient Factual Allegations to Support A Reasonable Inference That Defendants Have Failed to Follow Plaintiff's Quality Control Procedures**

Plaintiff's claims of trademark infringement based on the failure to follow its quality

control procedures similarly must be dismissed because Plaintiff fails to plead sufficient factual allegations to a support a reasonable inference that Defendants have failed to follow Plaintiff's quality control procedures.  In order to state a claim for recovery and survive a motion to dismiss, Plaintiff's Complaint must allege sufficient facts for the Court to draw a reasonable inference that Defendants are liable for the misconduct alleged. *See Berneike*, 708 F.3d at 1144-45 (quoting *Iqbal*, 556 U.S. at 678) ("A claim has facial plausibility when the [pleaded] factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). The Court may not weigh potential evidence that may be presented at trial but must assess whether Plaintiff's Complaint alone is legally sufficient to state a claim for which recovery may be granted. *See Sutton v. Utah Sch. for the Deaf and Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (quoting *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir.1991)).  Furthermore, notwithstanding some courts' recognition that pleadings "upon information and belief" may be sufficient, Plaintiff must still provide sufficient factual allegations to plausibly link Defendants' alleged misconduct to the claims for relief. *See Four Winds Interactive Ltd. Liab. Co. v. 22 Miles, Inc.*, 2017 U.S. Dist. LEXIS 215161 (D. Colo. Mar. 28, 2017) (finding copyright infringement claim plausibly pled when complaint included facts outlining evidence of access); *Arista Records Ltd. Liab. Co. v. Doe*, 604 F.3d 110 (2d Cir. 2010) (finding copyright infringement claim plausibly pled when complaint included exhibits connecting Doe defendant's IP address and plaintiff's copyrighted material); *see also Leapers, Inc. v. First Quality Distribs., Inc.*, 2012 U.S. Dist. LEXIS 67650 (E.D. Mich. May 15, 2012) (stating that even where courts have permitted parties to plead "upon information and belief," the pleadings contained some factual information such as relevant dates, identification of products or services at issue, and detailed accounts of how statutes were violated).

Here, Plaintiff's Complaint raises no facts beyond conclusory allegations based "upon information and belief" that Defendants failed to follow certain of Plaintiff's alleged quality control procedures. Plaintiff alleges that Defendants fail to follow quality control procedures because, *inter alia*, "upon information and belief" Defendants do not inspect the products they sell for damage (¶79); "upon information and belief" Defendants do not store their products properly (¶80); "upon information and belief" Defendants inappropriately handle inventory sold through Amazon (¶81); "upon information and belief" Defendants sell opened, returned, and/or repackaged products as "new" (¶82); and, "upon information and belief" Defendants do not handle packaging and shipping of products properly (¶83). Plaintiff alleges no specific facts that support these conclusions, because none exist.

Moreover, Plaintiff pleads no other facts relating to Defendants' activities to support or substantiate its allegations. Plaintiff fails to plead allegations of its own test-purchases of Defendants' products, efforts to corroborate the Amazon customer reviews with Defendants' sales, or investigations into Defendants' facilities and inventory practices, which, if done, would have resulted in Plaintiff's knowing that Defendants products are and continue to be genuine and authentic. Plaintiff only provides reviews from Amazon.com customers, which it again unsupportively alleges "upon information and belief" may have been made by consumers who purchased Skullcandy products from Defendants. *See Complaint* ¶ 43 ("Upon information and belief, some of the foregoing complaints were made by consumers who purchased products from Defendants"). Plaintiff's Complaint amounts to nothing more than a speculative "shot-in-the-dark" in hopes of ceasing a legitimate business.

Without more support than conclusory pleadings based "upon information and belief," Plaintiff's Complaint fails to "nudge[] their claims" regarding Defendants' alleged misconduct

"across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Therefore, Plaintiff's claims for trademark infringement based on Defendants' failure to follow Plaintiffs' quality control procedures must be dismissed.

## **CONCLUSION**

Based on the foregoing, this Court should dismiss Plaintiff's Complaint against Defendants for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

Dated: February 4, 2019                    Respectfully submitted,

                                           **SHUMWAY VAN**


                                           By: /s/ *Robert T. Spjute*
                                           Michael C. Van, Esq.
                                           Robert T. Spjute, Esq.
                                           *Attorneys for Defendants*



                                           **STERN & SCHURIN LLP**


                                           Steven Stern
                                           (awaiting admission *pro hac vice*)
                                           Benjamin Little
                                           (awaiting admission *pro hac vice*)
                                           *Attorneys for Defendants*